UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

FRED HOWARD JR #117952                    CIVIL ACTION NO. 20-cv-1466

VERSUS                                     JUDGE S. MAURICE HICKS, JR.

DARREL VANNOY                              MAGISTRATE JUDGE HORNSBY

**REPORT AND RECOMMENDATION**

**Introduction**

A Caddo Parish jury convicted Fred Howard, Jr. ("Petitioner") of unauthorized use of a motor vehicle, aggravated flight from an officer, and aggravated criminal damage to property. Petitioner was adjudicated a fourth felony habitual offender and sentenced to life imprisonment without benefit of parole. The state court later resentenced Petitioner, in light of a change in state law, to a life sentence with benefit of parole.

Petitioner now seeks federal habeas corpus relief related to his sentence, which he mistakenly describes as life without parole. He urges that (1) his sentence is excessive; (2) the gravity of the offense is grossly disproportionate to the severity of the sentence; (3) a life sentence without parole is disproportionate compared to other criminal sentences imposed in the state; (4) a life sentence without parole is disproportionate compared to other criminal sentence imposed in other jurisdictions; (5) the sentence serves no legitimate penological purpose; and (6) the totality of his claims indicate that his sentence is excessive. For the reasons that follow, it is recommended that his petition be denied.

**State Court Proceedings**

Petitioner's conviction stems from an October 2000 incident that began when Petitioner approached a man, identified himself by a false name, and offered to detail the man's van. The man agreed and allowed Petitioner to take the van to a car wash to do the work. Petitioner later arranged to take the van for a second detailing, but that time he did not return it. The man reported his van as stolen.

Four days later, a Shreveport motorcycle officer spotted Petitioner driving the van and attempted to stop him. Petitioner refused to stop, and a high-speed chase ensued with several patrol units. Petitioner engaged in numerous highly dangerous driving maneuvers that endangered the pursuing officers and other drivers. The chase was on the interstate as well as in residential neighborhoods. Petitioner once crossed over a median and drove the wrong way on Highway 3132 (a busy, 4-lane divided highway). He left the interstate by driving the wrong way on an entrance ramp, and his speeds were up to 80 miles per hour.

Several of the officers tried to stop the van on the I-220 Cross Lake bridge by boxing it in alongside an 18-wheeler. As the vehicles slowed, Petitioner rammed or bumped the rear of the lead officer's vehicle four to eight times. The entire chase was captured on video.

Officers tried to shoot out the van's tires. One officer fired shots at the van after he had to jump out of its path to avoid being hit. The van, with two flat tires, finally stopped. Petitioner had been shot in the eye and arm. He gave several reasons for not stopping, primarily that he knew he had an outstanding warrant and did not want to spend the holidays in jail.

Weeks before the scheduled trial, the State offered a plea bargain with a 15-year agreed sentence. Petitioner turned it down. The State made another offer before jury selection, and Petitioner turned it down. After the jury was seated, Petitioner offered to plead guilty in exchange for a 10-year sentence, but the State rejected the offer. Petitioner then offered a 15-year sentence. The State rejected the offer, noting that Petitioner had an opportunity to accept plea offers earlier in the case before a jury was seated, witnesses attended, and the State prepared for trial; all offers were off the table.

The jury returned a unanimous verdict of guilty. The State filed a habitual offender bill of information, and Petitioner was adjudicated a fourth felony offender. The prior convictions were indecent behavior with a juvenile, unauthorized use of a movable, and attempted sexual battery.

The trial court imposed what was then a mandatory sentence of life imprisonment without benefit of probation, parole, or suspension of sentence on the aggravated criminal damage to property conviction (with the sentence enhanced based on habitual offender status). Petitioner was sentenced to two years for aggravated flight from an officer and five years on unauthorized use of a motor vehicle, with those sentences to run concurrently.

Petitioner appealed and raised challenges. One appellate issue was a claim of excessive sentence, based primarily on state law. The appellate court noted that not returning a vehicle timely is a non-violent crime, but the subsequent flight from police in a high-speed and dangerous chase put numerous lives at risk. Petitioner even tried to run over a police officer. Petitioner had a lengthy criminal history that included numerous arrests for unauthorized use of a movable and several sexual offenses involving teenage

boys.  He received probation for a 1985 conviction for crime against nature, and the probation was revoked after a 1987 guilty plea to indecent behavior with a juvenile. Petitioner was charged in 1991 with sexual battery of a 15-year-old boy, and he pled guilty to attempted sexual battery.  Petitioner was 43 years old, old enough to know better, but continued to commit various crimes with no sign of slowing.  The appellate court found that the goals of the habitual offender statute, to deter and punish recidivism, were satisfied by imposing the statutorily mandated life sentence.  State v. Howard, 859 So.2d 936 (La. App. 2d Cir. 2003).

Petitioner filed a post-conviction application and multiple motions to correct an illegal sentence.  All were denied until Petitioner filed a fifth motion to correct illegal sentence in 2018.  The state appellate court concluded that his life sentence was not illegal because it fell within the applicable sentencing range, but a change in state law meant that the parole prohibition in the sentence was illegal.  The trial court resentenced Petitioner to reflect the benefit of parole eligibility.  Petitioner appealed and argued that his life-with-parole sentence was unconstitutionally harsh and excessive.  The appellate court held that the life term aspect of the sentence was final after the prior proceedings; it was not reviewable on the second appeal.  State v. Howard, 289 So.3d 1176 (La. App. 2d Cir. 2020), writ denied, 297 So.3d 722 (La.).  Chief Justice Johnson dissented from the Louisiana Supreme Court's writ denial and opined that the sentence was excessive and disproportionate to the offense of aggravated criminal damage to property.

**Habeas Analysis**

### A. Exhaustion; Procedural Bar

The State has carefully traced Petitioner's complicated procedural history in its memorandum.  The State argues that Petitioner did not properly exhaust his state court remedies with respect to the claims he presents in his federal habeas petition.  A writ of habeas corpus "shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(1)(A).  To satisfy this exhaustion requirement, a prisoner must fairly present his federal (not state-law) claim in each appropriate state court.  Baldwin v. Reese, 124 S.Ct. 1347, 1349 (2004).  The federal claim must also be presented in an application for a discretionary writ to the state's highest court.  O'Sullivan v. Boerckel, 119 S.Ct. 1728, 1732 (1999).

The State points out that Petitioner did not file a writ application with the Louisiana Supreme Court after his first appeal, and it argues that his second appeal made only limited reference to the Eighth Amendment and did not properly present a federal excessive sentence claim in compliance with state procedural rules.  The State argues that, because it is too late for Petitioner to return to state court and properly exhaust the claims, all claims in the federal petition are technically exhausted but procedurally defaulted.  Jones v. Jones, 163 F.3d 285, 296 (5th Cir. 1998).  These procedural defenses may have merit, but the court elects to address the habeas claims on the merits.  Glover v. Hargett, 56 F.3d 682, 684 n.1 (5th Cir. 1995) (the court may decline to address whether a claim is procedurally barred when the claim fails on the merits).  The defenses are reserved to the State in the event a reviewing court should find that the excessive sentence claims have merit.

### B.  State Law Claims

Several of Petitioner's arguments are based on the Louisiana Constitution and related jurisprudence.  The habeas statute provides that a federal court may issue a writ of habeas corpus to a state prisoner only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a).  The Supreme Court has "stated many times that federal habeas corpus relief does not lie for errors of state law."  <u>Swarthout v. Cooke</u>, 131 S.Ct. 859, 861 (2011).  Habeas relief is not available even if Petitioner is correct on his state law arguments.

### C.  Section 2254 Requirements

If Petitioner properly presented his federal claims to the state courts, as required for exhaustion, then the federal claims were decided on the merits.  Habeas corpus relief is available with respect to a claim that was adjudicated on the merits in the state court only if the adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d).

A state court's decision is contrary to clearly established Supreme Court precedent when it relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts.  <u>Williams v. Taylor</u>, 120 S.Ct. 1495, 1519-20 (2000).  A state court makes an unreasonable application of clearly established federal law when it identifies the

correct governing legal principle from the Supreme Court's decisions but applies it to the facts in a way that is not only incorrect but objectively unreasonable.  Renico v. Lett, 130 S.Ct. 1855, 1862 (2010).

It is not enough for a federal court to disagree with the state court.  Rather, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, 131 S.Ct. 770, 786-87 (2011).  Applying this standard does not require that there be an opinion from the state court explaining its reasoning.  The petitioner still must meet his burden "by showing there was no reasonable basis for the state court to deny relief."  Id. at 784.

### D. Analysis

The Supreme Court has reviewed a number of lengthy sentences for multiple offenders.  The Court held in Rummel v. Estelle, 100 S. Ct. 1133 (1980) that a defendant's sentence of life imprisonment for a conviction for obtaining $120.75 by false pretenses, pursuant to a Texas recidivist statute providing a mandatory sentence of life imprisonment for any defendant convicted of three felonies, did not violate the Eighth Amendment, even where the defendant's prior offenses (credit card fraud and forged checks) were non-violent.  The Court noted that the possibility the defendant would obtain parole could not be ignored, and that possibility distinguished the case from those that involved a sentence of life without parole.  Id. at 1142-43.

It appears that the only modern decision to grant relief on a similar claim is <u>Solem v. Helm</u>, 103 S.Ct. 3001 (1983), which struck down a sentence of life without parole for a man who was convicted of writing a "no account" check for $100 and who had three prior convictions for third-degree burglary, one prior conviction for obtaining money under false pretenses, one prior conviction of grand larceny, and one prior conviction of third-offense DWI. The majority found the sentence was significantly disproportionate to the crime, and Solem prevailed.

"In other cases, however, it has been difficult for the challenger to establish a lack of proportionality." <u>Graham v. Florida</u>, 130 S.Ct. 2011 (2010). In <u>Harmelin v. Michigan</u>, 111 S.Ct. 2680 (1991) the offender was sentenced to life without parole for possessing a large quantity of cocaine. A closely divided Court upheld the sentence. Another closely divided Court rejected a challenge to a sentence of 25 years to life for the theft of a few golf clubs under California's three-strikes statute. <u>Ewing v. California</u>, 123 S.Ct. 1179 (2003).

The Court in <u>Lockyer v. Andrade</u>, 123 S.Ct. 1166 (2003) reviewed its sentencing decisions and rejected a habeas attack on two consecutive terms of 25 years to life for a third-strike conviction. The petitioner had a string of burglary, drug, and property-crime convictions, capped by felony petty-theft after he stole approximately $150 worth of videotapes. The sentence did not permit habeas relief because it was not contrary to or an unreasonable application of clearly established gross disproportionality principle set forth in Supreme Court holdings. The Court admitted that its precedents in the area were not

clear, which makes it quite difficult to obtain habeas relief under the deferential Section 2254(d) standard.

Petitioner's arguments characterize his sentence as life without parole, but the state court has modified his sentence to make it life with the possibility of parole. Petitioner characterizes his crime as one for mere property damage, but his is an extraordinary case where the incident in which the property (a police car) was damaged involved serious risk of danger to multiple police officers and citizens. The best case for Petitioner is Solem, but the defendant in that case was sentenced to life without parole and had a history of ordinary property crimes and DWI. Petitioner, by comparison, received a life sentence that permitted the possibility of parole, and he had an extensive criminal history that included sexual offenses against minors and violation of the terms of probation.

No matter whether Petitioner urges that his sentence is excessive, disproportionate, or otherwise improper under the Eighth Amendment, he cannot establish that the state court's denial of his claims resulted in an objectively unreasonable application of clearly established Supreme Court precedent. He can point to no Supreme Court decision in which a person with a similar criminal history received a life sentence *with* benefit of parole and that sentence was deemed unconstitutional. As in Lockyer, the state court's rejection of Petitioner's arguments was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent, so habeas relief is not permitted. Furthermore, based on the decisions cited above, Petitioner's claims would not warrant habeas relief even under *de novo* review. Berghuis v. Thompkins, 130 S.Ct. 2250, 2264 (2010) (courts can

"deny writs of habeas corpus under § 2254 by engaging in *de novo* review when it is unclear whether AEDPA deference applies").

Accordingly,

It is recommended that Petitioner's petition for writ of habeas corpus be denied.

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

An appeal may not be taken to the court of appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice, circuit judge, or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c); F.R.A.P. 22(b).  Rule 11 of the Rules Governing Section 2254 Proceedings for the U.S. District Courts requires the district court to issue or deny a certificate of appealability when it enters a final order adverse to the

applicant. A certificate may issue only if the applicant has made a substantial showing of the denial of a constitutional right. Section 2253(c)(2). A party may, within fourteen (14) days from the date of this Report and Recommendation, file a memorandum that sets forth arguments on whether a certificate of appealability should issue.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 19th day of April, 2023.

Mark L. Hornsby
U.S. Magistrate Judge